Nat H. Hentel, J.
This proceeding is a holdover brought upon the alleged grounds that the tenant is a nuisance in the premises. In the 30-day notice terminating her tenancy and served upon the tenant, some seven acts of misconduct allegedly constituting nuisance are made by the landlord including the hygienic habits of the tenant’s cat; accumulation of garbage in tenant’s apartment; an alleged assault upon the landlord; alleged use of profane and abusive language, and leaving the gas on in tenant’s apartment with the burner unlit.
The proof adduced at the trial establishes that the tenant is an 88-year-old woman who lives alone with her cat, and who is hard-of-hearing and enfeebled by her advanced years. She has no family and other than two local friends who look in on her regularly she lives the unrelentingly lonely and grinding life of an elderly person who has outlived family, friends, and usefulness in a cold society which appraises usefulness on whether or not an individual still has something to give. Apparently, once a person has been drained dry of good looks, nimble mind, clear eye and skin, the resultant dregs are ready to be cast upon the scrap heaps of homes for the aged or other institutional devices for getting rid of unuseful people.
There is no claim here that the tenant does not pay her rent. Were it not for the fact that the landlord elected to declare the tenant’s leasehold at an end because of the alleged nuisances, the tenant’s lease would not have terminated until October 28, 1975) and then it would be renewable at the tenant’s option for an additional 10 years. The lease dated October 28, 1965, and introduced in evidence, provides among other things: 11 This lease shall terminate on the death of the tenant, Mary Kusstatscher ”; and “ This lease is given as part of the considerations for the sale of the premises by the tenant to the landlord *502 herein. ’ ’ From the papers on file in this proceeding, the court has learned that the tenant owned the subject premises since 1935, and sold them in 1965 to the present landlord. According to the affidavit of the tenant’s attorney sworn to by him on October 21, 1969, which was uncontradicted, ‘‘ As part and parcel of this transaction the present landlord had to lease the apartment, in which tenant now resides, to her, for the rest of her natural life, at $60.00 per month.” It appears that the tenant in selling her home to her present landlord had arranged for-a lifetime place to live and this was apparently the intention of both parties.
Based upon the proof at the trial, this court finds that the landlord has not sustained the burden of proving items numbered 1, 2, 3, 5, 6, and 7 set forth in the landlord’s notice of termination of tenancy dated August 29, 1969, upon which he bases his claim of right to terminate because of the alleged acts of nuisance committed by the tenant.
With respect to item 4, involving the opening of gas cocks without lighting the gas, the landlord’s proof indicated that there were some four different occasions in the past year of such conduct upon the part of the tenant. The proof, however, is not definitive or clear-cut with respect to three occasions but is convincing with respect to one occurrence in October, 1969. Yet, this court is not convinced that the landlord has sustained the burden of proof even with respect to item 4, based on one proved instance of leaving the gas flow without being lit. To sustain the charge of nuisance, or that the tenant is objectionable, a landlord must show a course of conduct over a period of time performed by the tenant, and which poses a threat to the safety, health and peaceful enjoyment of the premises by others lawfully using the premises. As a general rule to make a tenancy objectionable, the use of the property by the tenant must be unwarranted, unreasonable or unlawful, to the annoyance, inconvenience, discomfort, or damage of another. (Matter of Twin Elm Mgt. Corp. v. Banks, 181 Misc. 96.) An isolated instance of objectionable conduct will be insufficient, as a general rule, to warrant the removal of a tenant as objectionable (Metropolitan Life Ins. Co. v. Moldoff, 187 Misc. 458, affd. 272 App. Div. 1039). In the failure of clear and convincing proof of the commission of the nuisances as alleged by the landlord, the petition is dismissed; the landlords’ notice of termination of tenancy is nullified and the tenant is restored to her original status and rights under the terms of the October 28, 1965 lease.
*503 The court feels that the only thing of which the tenant is guilty is that she has grown old with the concomitant ills and infirmities that beset the elderly. However, she appeared in court during the trial of three separate days. She behaved herself rationally in court in the observation of the court. She took the stand in her own behalf, and although she was hard of hearing, she nevertheless demonstrated her ability to respond to questions put to her in two languages; she appeared oriented as to where she was and her function as a witness. The testimony of two of her friends indicated that she continues to care for herself, shop for herself, and that she keeps her apartment in reasonable order and neatness. The fact that she could not name her landlady in court is typical of the elderly who have arrived at a senile or presenile condition. This may or may not be true here since there are many younger, healthy persons who cannot recall names of individuals.
This court is convinced that the tenant should not be torn from the surroundings familiar to her for the past 34 years. Certainly there is no other comfortable place she could go to at a more reasonable rent. Her life which is just as precious to her as is life to the landlord, can best be preserved and extended by insuring that she be allowed to live her life out peacefully and with dignity in familiar surroundings; and that she be permitted to continue to do and fend for herself as long as she possibly can. The ability of the elderly to live independently is what keeps their human machinery going. I find that the tenant is not a nuisance merely because of the burden of her many years.
However, I am concerned about the possibility of forgetfulness in turning off the gas stove which the tenant uses to heat her meals. There are three infant children who live with two other families also occupying the premises. I recommend that the following course of action be taken to eliminate any possible hazard: The landlord could remove the gas stove from the tenant’s apartment and install in its stead a two-burner electric heater. The cost of this installation could be apportioned as additional monthly rental over the rest of the life of the lease or could be offset against the allowance under the lease to the tenant under paragraph 21. The details can be worked out amicably between the attorneys for both parties.